IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

PAMELA J. PEDRO,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

Civ. No. 2:16-cv-01599-CL

REPORT AND RECOMMENDATION

---

MARK D. CLARKE, Magistrate Judge.

Plaintiff Pamela J. Pedro seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits and Supplemental Security Income pursuant to the Social Security Act. For the reasons below, the Commissioner's decision should be REVERSED and REMANDED for further administrative proceedings.

## BACKGROUND

Plaintiff was born October 5, 1954, and is currently sixty-two years old. Tr. 16. In May 2012, Plaintiff filed for a period of disability, disability insurance benefits, and supplemental security income; she alleged disability onset as of October 1, 2011. Tr. 16. On November 6, 2014, Plaintiff had a hearing before an administrative law judge ("ALJ"). Tr. 51. Plaintiff

contended that she was disabled due to a combination of impairments, namely, post-traumatic stress disorder ("PTSD"), panic attacks, degenerative arthritis in her hip and neck, and depression. Tr. 31, 77. In 1971, Plaintiff was involved in a car accident, which killed the driver of the car Plaintiff was in and hospitalized Plaintiff. Tr. 469. 642. Eight years later, in 1979, she found her husband, a police informant, stabbed to death. Tr. 755. She states she was later "raped and beaten by [a] man" she had been living with for seven years; indeed, she reports that he held a "357 magnum gun to her head for 5-10 minutes," though she failed to report this because "the man threatened her and her son." Tr. 755. Recently, her only son was diagnosed with lung cancer; it appears he is currently in remission. Tr. 65, 641.

Plaintiff's treating physician, Dr. Stephen R. Bump, M.D., states Plaintiff suffers from PTSD, depression, and severe anxiety; she also experiences chronic low-back and right-leg pain. Tr. 819. Plaintiff's extreme anxiety and depression, Dr. Bump opined, have caused Plaintiff's concentration, persistence, and/or pace to be extremely limited; he stated, "she has trouble conversing in the office without crying [and] her anxiety/depression obviously have a very significant effect on her social functioning." Tr. 821. Hence, Dr. Bump believed, "Simple [and] routine work even are unsuitable for her [] and I believe it would cause her to stress and not be reliable." Tr. 822. In support of his findings, Dr. Bump included treatment notes from Plaintiff's most recent visit. Tr. 823-26. Dr. Bump has been Plaintiff's primary care physician since July 2013. Tr. 819.

Corroborating Dr. Bump's findings were the opinions of mental health providers Sandy Murphy, LCSW, and Mary A. Goldstein, LCSW. Tr. 827-834. Both Ms. Murphy and Ms. Goldstein described Plaintiff as an individual who suffers from PTSD, panic disorders, and a major depressive disorder. Tr. 827, 831; *see also* 721-24, 727-57. Ms. Murphy described

Plaintiff's PTSD as "impairing" and that Plaintiff "is extremely avoidant [and] her social interactions are limited to family members." Tr. 828. Plaintiff "is likely," Ms. Murphy explained, "to respond to stressful situations by having a panic attack or becoming imobilized [sic]." Tr. 829. She also noted that Plaintiff reported being unable "to go in public without having a panic attack. . . ." Tr. 751. Meanwhile, Ms. Goldstein described Plaintiff as "highly anxious" and having "to work extremely hard to stay on task. She is easily emotional [and] overwhelmed." Tr. 832. Moreover, while Plaintiff can engage in cooking, cleaning, self-care, and other tasks confined to the home, Ms. Goldstein stated that Plaintiff's functioning outside of the home is "significantly (i.e. extremely) limited." Tr. 833. Both described Plaintiff's ability to complete a normal workday or workweek without interruption from psychologically based symptoms as markedly limited. Tr. 829, 833.

The ALJ either rejected or failed to consider all three of these health care providers' opinions. Tr. 33-34, 36. Additionally, the ALJ discounted Plaintiff's testimony, finding "issues in the claimant's credibility." Tr. 29. Hence, on December 12, 2014, the ALJ denied Plaintiff's application for benefits. Tr. 38. On June 2, 2016, the Appeals Council denied Plaintiff's request for review. Tr. 1. This timely appeal followed.

On appeal, the Commissioner "concedes harmful error in the ALJ's decision and development of the record." Def.'s Br., at 3. In contrast to Plaintiff, however, who asks that the Court remand for immediate award of benefits, the Commissioner requests that the Court remand for further administrative proceedings. The Commissioner argues that two reasons necessitate a remand for further proceedings instead of immediate benefits. First, the Commissioner maintains that the record is not fully developed because the agency has not yet obtained Plaintiff's mental

health records from "Shelter from the Storm" Treatment Center ("Shelter from the Storm"). And, second, even if the record is fully developed, the record contains conflicting evidence.

Because both parties agree that the Commissioner's decision was erroneous, the Court dispenses with an analysis of the standard of review in analyzing the ALJ's decision and instead discusses whether to remand for immediate award of benefits or for further administrative proceedings.

## STANDARD OF REVIEW

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). Generally, when a court reverses an administrative decision, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (internal citation omitted). Hence, "the existence," or lake thereof, of a disability determines whether to remand for an immediate award of benefits. *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015).

## DISCUSSION

On this record, the Court believes the proper course is to remand the case for further administrative proceedings.

## I. Completeness of the record

As discussed, the Commissioner argues that the case should be remanded for further proceedings because the record is not fully developed. The Commissioner points out that Plaintiff's counselor at Shelter from the Storm, Lyn Westhoff, B.A., submitted a letter supporting Plaintiff's disability application. Tr. 655. Ms. Westhoff did not, however, provide her treatment records with the letter. Accordingly, the Commissioner maintains, "Plaintiff's compliance with treatment and the effectiveness of counseling cannot be assessed." Def.'s Br., at 6. The Commissioner further argues that these records are highly important in terms of evaluating the medical opinion evidence, as "opinions that are inconsistent with a claimant's treatment records may be rejected." Def.'s Br., at 6 (internal citations omitted).

In response to this argument, Plaintiff submitted a letter from Teresa Crouser, Shelter from the Storm's executive director, responding to Plaintiff's request for the sought-after documents. The letter states that in order "to ensure the safety of our clients . . . and [because of] our confidentiality requirements, Shelter From the Storm does not keep case files, records, or chart notes of any kind." Pl's Ex. 1. Hence, Plaintiff opined, remanding the case for further proceedings so that the agency may attempt to procure any outstanding medical records from Shelter from the Storm would serve no useful purpose.

Following Plaintiff' submission of Ms. Crouser's letter, the Court permitted the Commissioner to file a sur-reply in response to Plaintiff's argument that remanding the case in an effort to obtain these medical records would be futile. In its sur-reply, the Commissioner pointed out that the letter from Shelter from the Storm does not necessarily lead to the conclusion that remanding to secure these records would be unavailing. While the letter does say that Shelter from the Storm does not keep such records, as the Commissioner stated, it is not a medical

service provider. Indeed, Ms. Westhoff "provid[ed] the counseling services" at issue, Tr. 655, and Plaintiff nowhere represented that Ms. Westhoff does not individually possess such records. "Thus, the Commissioner may simply need to request the relevant records from Ms. Westoff [sic] directly, instead of Shelter from the Storm." Def.'s Sur-reply, at 3.

Because these sought-after records could aid in assessing the consistency, or lack thereof, of Plaintiff's treatment records when compared with the available medical opinions, the Court ordered Plaintiff to determine whether Ms. Westhoff does in fact possess the counseling records the Commissioner seeks. On August 10, 2017, an attorney for Plaintiff submitted an affidavit to the Court stating Ms. Westhoff "is 90% sure she has records of her time counseling [Plaintiff]." Royer Affidavit, at 1.

Consequently, because the record is not fully developed, remand for further administrative proceedings is necessary. In fact, remand for an immediate award of benefits is appropriate *only* where three conditions are met:

> (1) The record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (internal citations omitted). Here, without Ms. Westhoff's treatment records, the record is not fully developed; thus, the three conditions for remand without further proceedings are not met, and the Court must remand for further administrative proceedings, as the Commissioner requests.

Furthermore, remand for additional proceedings is all the more important here given the potential probative value Ms. Westhoff's treatment records possess. Plaintiff contends the ALJ

improperly rejected the opinions of Plaintiff's treating physician Dr. Bump as well as the opinions of mental health providers Ms. Murphy and Ms. Goldstein. As the Ninth Circuit has stated, however, an ALJ may discount the medical opinions of treating physicians and therapists if they are found to be inconsistent with the treatment records. *Jones v. Colvin*, 634 Fed. Appx. 168, 170 (9th Cir. 2015). Consequently, Ms. Westhoff's missing treatment records are highly important in analyzing Plaintiff's disability claim, as they will aid the ALJ in assessing the consistency of Dr. Bump's, Ms. Murphy's, and Ms. Goldstein's opinions with the treatment records. Therefore, these treatment records will play a central role in the disability analysis.

Moreover, Plaintiff contends the ALJ improperly discounted her credibility, yet the agency's rules state that "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96–7p. Accordingly, Ms. Westhoff's treatment records are also of high importance in assessing Plaintiff's credibility, and their absence from the record precluded the agency from coming to a fully informed decision regarding Plaintiff's disability status. Hence, the case should be remanded so that the ALJ may assess this additional evidence.

## II. Conflicting evidence

Absent this additional evidence, however, the Court finds no conflicting medical evidence that would warrant a finding besides disabled. Indeed, here, Dr. Bump determined that Plaintiff's PTSD, depression, and severe anxiety lead to extreme limitations in her concentration, persistence, and/or pace, with significant effects on her social functioning. Tr. 819, 821. Dr. Bump also noted that Plaintiff would be able to carry ten pounds only occasionally, less than ten pounds frequently, could stand or walk for four hours in an eight-hour workday, and sit for forty-

five minutes at one time and for a total of four hours in an eight-hour workday. Tr. 820. When asked if an individual with these limitations could find work in the national economy, the Commissioner's vocational expert testified that they would not, thus supporting a finding of disabled. Tr. 71. Dr. Bump's mental health findings are largely supported by Dr. Inski Yu, M.D., who treated Plaintiff on multiple occasions, also noted Plaintiff's severe anxiety, due in large part to her son's cancer diagnosis. Tr. 617-19, 624-25, 649, 652-53.

Dr. Bump is Plaintiff's long-time treating physician. Tr. 819. Dr. Yu also treated Plaintiff. Tr. 617-19, 624-25, 757. "The medical opinion of a claimant's treating physician is entitled to special weight." *Rodriguez*, 876 F.2d at 761 (internal quotation and citations omitted). The opinion is given deference and should only be disregarded with "specific, legitimate reasons" supported by "substantial evidence." *Id.* at 762 (internal quotation and citation omitted).

Here, no such evidence exists. In arguing that there is conflicting evidence, the Commissioner points to Dr. Terrel L. Templeman, Ph.D.,'s psychological evaluation of Plaintiff in September 2012. Tr. 641-45. While Dr. Templeman did believe that "[w]ith proper treatment . . . [Plaintiff] likely could be back in the working world again," Tr. 645, he described nearly identical symptoms of depression, anxiety, and PTSD as did Dr. Bump, Dr. Yu, and mental health providers Ms. Murphy and Ms. Goldstein. Specifically, Dr. Templeman stated Plaintiff's "presentation and history are consistent with both major depression and post traumatic stress disorder." Tr. 645. Dr. Templeman also noted that Plaintiff has become increasingly "socially avoidant" since leaving her last job, which only compounds her feelings of anxiety and hopelessness. Tr. 645. This is in line with Dr. Bump's finding that Plaintiff's anxiety/depression has a very significant effect on her social functioning. Tr. 821. It is also synonymous with Ms. Murphy's and Ms. Goldstein's analyses that Plaintiff "is extremely avoidant [and] her social

interactions are limited to family members," Tr. 828, and that her functioning outside of the home is "significantly (i.e. extremely) limited." Tr. 833.

Dr. Templeman similarly determined that Plaintiff's concentration was "somewhat disrupted," Tr. 645, which Dr. Bump also identified, though he felt it was more severe, stating that Plaintiff's concentration, persistence, and/or pace was extremely limited. Tr. 821. Finally, Dr. Templeman described Plaintiff in the interview as being "anxious [and] tearful," Tr. 644, again consistent with Ms. Murphy, who routinely recorded Plaintiff as "tearful," *see, e.g.*, Tr. 744, 754, as did Dr. Bump. *See* Tr. 826.

As noted, "[a] treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (internal citation omitted). Dr. Templeman's findings, which largely corroborate Dr. Bump's, and indeed Dr. Yu's, opinions certainly do not arise to this level. Beyond Dr. Templeman's opinions, the ALJ could, at best, point to state medical examiners' findings that Plaintiff's physical and mental limitations were less restrictive than Dr. Bump and Dr. Yu found. For instance, Leslie E. Arnold, M.D., found Plaintiff could carry twenty pounds occasionally and ten pounds frequently, could stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour work day. Tr. 86. The medical expert at Plaintiff's hearing also came to this conclusion. Tr. 60. In addition, Bill Hennings, Ph.D., found Plaintiff was "capable of sustained concentration and persistence with simple and detailed tasks." Tr. 87. Likewise, state examiner Richard Alley, M.D., akin to Dr. Arnold, opined that Plaintiff had no postural limitations, manipulative limitations, visual limitations, communicative limitations, or environmental limitations. Tr. 116. And state

examiner Dorothy Anderson, Ph.D., like Dr. Hennings, found Plaintiff to be "capable of understanding and remembering simple routine tasks," in addition to "complex tasks." Tr. 116.

These opinions are hardly the type of substantial evidence worthy of discrediting treating physicians' opinions. The Commissioner is to consider specific factors in determining the weight to be given to a treating physician's opinion; one of those factors is "the length of the treatment relationship and the frequency of examination by the treating physician." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (internal quotation and citation omitted). Here, Dr. Bump's treatment relationship was significant, lasting for more than a year at the time that he filled out his report. Tr. 819. Dr. Yu also saw Plaintiff on multiple occasions. *See, e.g.*, Tr. 619, 625.[1] The state examiners, by contrast, met with Plaintiff once and had no prior treatment relationship with Plaintiff. Moreover, Dr. Hennings' and Dr. Anderson's findings regarding Plaintiff's concentration is at odds not only with Dr. Bump's and Yu's opinions but also Ms. Murphy, Ms. Goldstein, and even Dr. Templeman, who found Plaintiff's concentration to be "somewhat disrupted."

Accordingly, these examiners' reports are not substantial evidence worthy of discrediting the findings of Dr. Bump and Dr. Yu. This finding is only reinforced upon examining other medical sources in the record. For instance, Ms. Murphy and Ms. Goldstein, who, over the course of numerous sessions with Plaintiff, found Plaintiff's ability to engage in the necessary physical and mental activities required for gainful employment to be markedly limited. Tr. 829, 833. Likewise, Ms. Westhoff, who saw Plaintiff multiple times starting in January 2013, also described Plaintiff as experiencing "debilitating symptoms," which included "tearfulness,

---

[1] Notably, Ms. Murphy, who believed Plaintiff's ability to complete a normal workday or workweek to be markedly limited, also established a nearly year-long relationship with Plaintiff. Tr. 827.

Page 10 – REPORT AND RECOMMENDATION

increasing panic episodes, chronic and worsening anxiety, difficulty concentrating, fearfulness of others, [and] rising dread over the potential early death of her" son. Tr. 655.

The Social Security Administration notes:

> [M]edical sources who are not "acceptable medical sources," such as . . . licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handed primarily by physicians and psychologists. Opinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. SSR 06–03p, at *3.

Factors the ALJ should consider when determining the weight to give an opinion from those "important" sources include: the length of time the source has known the claimant and the number of times and frequency that the source has seen the claimant; the consistency of the source's opinion with other evidence in the record; the relevance of the source's opinion; the quality of the source's explanation of his opinion; and the source's training and expertise. SSR 06–03p, at *4. On the basis of the particular facts and the above factors, the ALJ may assign a not-acceptable medical source either greater or lesser weight than that of an acceptable medical source. SSR 06–03p, at *5-*6.

Ms. Murphy, Ms. Goldstein, and Ms. Westhoff had extensive treating relationships with Plaintiff; for example, Ms. Murphy treated Plaintiff for nearly a year. Tr. 827. Moreover, given their detail, these individuals' opinions are highly relevant on the issue of Plaintiff's anxiety, depression, and other mental health issues; they are also largely consistent with Dr. Bump's and Dr. Yu's findings. Thus, SSR 06–03p entitles their opinions to weight and only compounds the extensive findings of Dr. Bump and Dr. Yu.

Thus, in sum, when the existing medical evidence is properly considered, Plaintiff meets the criteria for a finding of disabled. As explained, however, the ALJ did not have occasion to

consider Ms. Westhoff's treatment records. And such treatment records must be considered, as an ALJ may discount the medical opinions of treating physicians and therapists—such as those depicted above—if they are found to be inconsistent with the treatment records. *Jones v. Colvin*, 634 Fed. Appx. 168, 170 (9th Cir. 2015). Hence, the need to consider additional treatment records requires remand for further administrative proceedings so as to ensure that the medical opinions that currently support a finding of disabled are consistent with Ms. Westhoff's treatment records.

### III. Plaintiff's testimony

Finally, the ALJ improperly rejected Plaintiff's subjective testimony. When, as here, a plaintiff has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the [plaintiff's] testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Here, as Plaintiff correctly points out, the ALJ's reasons for rejecting Plaintiff's subjective testimony are scattered, incoherent, and certainly below the clear-and-convincing standard required to reject a claimant's testimony. First, the ALJ's assertion that Plaintiff "did not seek regular treatment for the impairments until long after the alleged onset date," Tr. 29, is demonstrably false, as the medical evidence demonstrates she regularly sought treatment in 2012, shortly after the alleged onset date, from Dr. Yu, who diagnosed Plaintiff with severe anxiety. Tr. 617-19, 624-25, 649, 652-53. Moreover, the ALJ's additional reasons for discrediting Plaintiff's subjective testimony, specifically, that her symptoms appeared to improve with treatment, or have not significantly worsened over time, and that she appeared to average higher earnings in 2012, which tended to suggest "any increased symptomatology had minimal

effect on her ability to perform work activity," Tr.. 32, are directly contradicted by the extensive medical testimony provided by Dr. Bump, Ms. Murphy, Ms. Goldstein, Ms. Westhoff, and Dr. Yu, all of whom corroborate Plaintiff's subjective testimony that she suffers from recurring panic attacks, "severe anxiety attacks," and that she has fear of being around people, which led to her loss of employment and otherwise preclude her from seeking gainful employment more generally. Tr. 62-63.

Hence, far from clear and convincing, the evidence in the record tends to undermine the ALJ's reasons for discrediting Plaintiff's testimony about the severity of her symptoms. Nevertheless, as discussed, the absence of Ms. Westhoff's treatment records from the evidentiary record precluded the agency from coming to a fully informed decision regarding Plaintiff's credibility. Hence, the case should be remanded so that the ALJ may assess this additional evidence.

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner should be REVERSED and the matter should be REMANDED for further administrative proceedings. Upon remand, the ALJ should:

(1) Assess Ms. Westhoff's treatment records. After assessing this evidence, should the ALJ decide that Ms. Westhoff's treatment records warrant rejection of Dr. Bump's, Ms. Murphy's, and Ms. Goldstein's medical opinions, or Plaintiff's subjective testimony, he or she shall provide a legally sufficient explanation that properly details that decision.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See*

Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED this /6? day of August, 2017.

_____
MARK D. CLARKE
United States Magistrate Judge